**PICKERING & COMPANY, INC.**

v.

**E. V. GAME, INC.**

No. 79 C 2066.

United States District Court,
E. D. New York.

Jan. 15, 1980.

Kane, Dalsimer, Kane, Sullivan & Kurucz, New York City (Daniel H. Kane, Siegrun D. Kane, Gerald Levy, Virginia R. Richard, New York City, of counsel), for plaintiff.

Darby & Darby, P. C., New York City (Morris Relson, Leighton K. Chong, New York City, of counsel), for defendant.

OPINION

NICKERSON, District Judge.

Pickering & Co., Inc. ("Pickering"), a manufacturer of audio equipment including

phonograph cartridges and needles, brought this action for patent infringement and unfair competition against E.V. Game, Inc. ("E.V. Game"), a distributor of, among other things, replacement needles for phonograph cartridges. Pickering moved for a preliminary injunction on the unfair competition claims, asserting that E.V. Game was palming off cheaper non-Pickering needles as Pickering products. In particular, Pickering objected to E.V. Game's distribution of catalogues which used photographs of Pickering needles and corresponding Pickering needle numbers.

While E.V. Game maintained that the catalogues were intended solely to identify the type of needle being replaced, Pickering claimed that they created the misleading impression that Pickering products are being offered for sale.

Pickering asked that E.V. Game be preliminarily enjoined from distributing the catalogues, using photographs of Pickering products, filling orders received on the basis of the catalogues, and from otherwise giving the impression that Pickering products were being sold. Pickering also requested that E.V. Game be ordered to withdraw the catalogues and any other literature containing photographs of Pickering products, to withdraw from customers all so-called Pro-Mag replacement needles for Pickering cartridges, to segregate orders received for replacement of Pickering needles, and to direct appropriate letters to the trade advising, among other things, that the catalogues have been withdrawn and that all replacement needles for Pickering cartridges are to be reshipped to E.V. Game at its expense.

In a memorandum and order dated November 8, 1979, the court denied the motion on the ground that, although the catalogues appeared to the court misleading, Pickering had not made an adequate showing of irreparable harm.

Pickering then applied for reargument alleging that because the needles sold by E.V. Game are of a quality inferior to that of the Pickering needles its reputation inevitably will suffer when a customer, believing he has received a Pickering product, is dissatisfied with the performance of the E.V. Game needle. Pickering also claimed that mistakes in the catalogues in the identification of Pickering needles could lead to the damage of a customer's records or equipment.

At the court's direction a hearing was then held on the issue of whether the alleged irreparable harm which Pickering was likely to suffer justified a preliminary injunction.

■ The Court of Appeals has formulated the standard for preliminary injunctive relief as calling for "a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (1979). But, as Judge Mansfield's concurring opinion in that case points out, this formulation does not exhaust the factors that in fairness should be considered in deciding whether to grant or deny a preliminary injunction. 596 F.2d at 74.

■ Because a court asked for preliminary relief must decide the issue before hearing the full case, the decision to grant or deny the injunction may ultimately be determined by the court or on appeal to have been erroneous. Thus the legal rights of either the plaintiff or the defendant may be irreparably harmed by the court's preliminary ruling. If the harm to the plaintiff may be rectified in the final judgment there is, of course, no need to risk an erroneous decision by issuing a preliminary injunction. But when there may be irreparable harm to the plaintiff's rights unless an injunction issues and irreparable harm to the rights of the defendant if one does, a calculus must be made considering the likelihood that the preliminary decision is correct, the nature and extent of the relief to be granted, and the degree to which, if erroneously granted or denied, the relief

will occasion harm to either party. In making such a decision the objective must be to minimize the irreparable loss of rights which may be caused by an erroneous decision. *Home Box Office, Inc. v. Pay TV of Greater New York, Inc.*, 467 F.Supp. 525, 529 (E.D.N.Y.1979); Leubsdorf, *The Standard for Preliminary Injunctions*, 91 Harv. L.Rev. 525, 540–44 (1978).

In this case sufficiently extensive hearings have been held to enable the court to assess the likelihood that Pickering will succeed after a full trial and the harm which might be occasioned by an erroneous grant or denial of a preliminary injunction.

On its face E.V. Game's initial catalogue (defendant's Exhibit B) for the so-called Pro-Mag series of needles would give the impression, at least to an ordinary consumer, that E.V. Game was selling replacement needles manufactured by the respective companies listed, including Pickering. This impression is heightened by the use of photographs of the original needles which appear under the heading "illustration" and in some instances show the name, symbols or numbers of the original manufacturer.

A customer might well suppose that the photographs represent needles offered for sale by E.V. Game. There is no explicit statement in the body of the catalogue that the needles are made by or for E.V. Game or that they are not made by the manufacturers listed. The cover simply states at the top "EVG presents the Pro-Mag Series", and at the bottom "EVG. Professional Magnetic Replacement Styli at Popular Prices."

The testimony did not demonstrate, however, the extent to which the consumer was apt to see the catalogue. It is clear that it was intended primarily for the retailer, and there was testimony that only rarely did the retailer show it to the consumer to identify a needle to be replaced.

E.V. Game's later catalogue (plaintiff's Exhibit 1), besides correcting some errors, adds at the top of each right hand page above the manufacturer's name "Pro-Mag Replacement Styli for." The photographs

in this catalogue do not show the original manufacturers' names, symbols or numbers. The catalogue also includes a disclaimer at the end of the last page, stating, among other things, "[n]othing in this catalog should be considered a representation that the listed EVG PM needles are made by the original cartridge manufacturers." This statement is not so prominent, however, that the ordinary consumer would be likely to see it if using the catalogue to order a replacement needle.

E.V. Game also makes available to retailers a needle finder (defendant's Exhibit G), designed for use by the consumer to pick out the number of the pertinent E.V. Game needle sold as a replacement for a needle of an original manufacturer. The needle finder consists of a plastic stand on which are placed in a ring binder plastic pages showing photographs of various needles. The original manufacturer's name is at the upper left hand corner of each photograph, and the number of the E.V. Game replacement needle in the lower right hand corner. Each page is headed "needles of highest quality."

Nothing in the needle finder states explicitly that the needles are made by or for E.V. Game, although the front of the stand does bear in large letters at the bottom "Electro-Voice" and in small letters "EV–Game." There is no statement anywhere in the finder that the replacements being sold are not manufactured by the original manufacturers designated in the photographs.

The stand is identical to that used for some years prior to the time that E.V. Game was selling needles made by or for it as replacements for needles of other manufacturers. However, at that earlier time each page bore at the top the statement "Electro-Voice needles are highest quality."

An ordinary customer using the present needle finder might suppose that he was being sold a needle made by the original manufacturer.

Pickering's concern is not so much with the loss of sales as a result of the misapprehension of consumers. That loss may be remedied by damages. Pickering urges

rather that the improper or inadequate performance of the E.V. Game needles will have an adverse effect on Pickering's reputation in instances where consumers dissatisfied with an E.V. Game needle are under the impression they have been sold a Pickering needle. The evidence showed, however, that the likelihood of that adverse effect is limited.

The error in the first catalogue which Pickering claimed would lead to the damaging of records has now been corrected. No proof was adduced that any customer was in fact dissatisfied with an E.V. Game replacement for a Pickering needle. It is true that E.V. Game is selling replacement needles which in some instances do not reproduce the same range of sound as do the Pickering needles. But by and large only the most sophisticated "audiophiles" with excellent hearing are likely to appreciate the difference.

Presumably these are the customers most likely to insist upon the needle of their preference and in the case of Pickering needles to examine carefully what is tendered to them to see if the Pickering logo is present. The substantial difference in price between the Pickering and E.V. Game needles might alone alert such an audiophile to the difference in source. Thus the chances of impairment to Pickering's reputation seem hardly overwhelming.

Moreover, to grant Pickering the entire interim relief it seeks would be disproportionate to the chances that Pickering's reputation will be injured and would inflict on E.V. Game very substantial injury. It would in effect halt for a substantial period E.V. Game's sale of any replacements for Pickering needles and perhaps the sale of replacements for needles of other manufacturers.

On the other hand it does not seem fair for E.V. Game to continue until final disposition of the case to use catalogues and needle finders in a form presenting a potential for misleading some consumers. E.V. Game has not been distributing the original catalogue (defendant's Exhibit B) for some two and one half to three months. E.V.

Game is, however, still dispensing the revised catalogue (plaintiff's Exhibit 1), but the copies now being distributed contain a legend affixed to the bottom of the pages on which the Pickering name appears. The legend reads "Pro-Mag styli for Pickering Cartridges are the products of EV Game and are not made by Pickering & Co., Inc. unless so indicated on the stylus."

E.V. Game has in preparation a new catalogue which will soon be ready for distribution. That new version will contain the following statement at the top of the first page: "Pro-Mag replacement styli are the products of EV game and are not to be deemed made by the original cartridge manufacturer except where indicated on the stylus." In addition on the bottom of each page will appear the statement "Pro-Mag replacement styli are the products of EV Game." The legend above each list of original manufacturers' cartridge and needle numbers and corresponding E.V. Game needle number, where the heading in the previous catalogues was merely, for example, "Pickering", will read "Pro-Mag Replacement Styli for Pickering cartridges." The photographs will be of replacement rather than original needles.

E.V. Game also intends to send to retailers and ask them to paste on all needle finders hereafter distributed a statement similar to that which will be included in the new catalogue asserting that the styli are the products of E.V. Game and not of the original manufacturer except where indicated on the stylus. E.V. Game will forward to those retailers who now have needle finders such a legend and ask that it be pasted on the needle finders.

If these steps are implemented a customer examining the catalogue or needle finder is unlikely to be misled. After weighing the factors discussed above pertaining to the propriety of a grant or a denial of preliminary relief the court has concluded that no more stringent requirements are justified under the circumstances of the case and has signed an order, substantially in the form submitted by E.V. Game's attorney on December 26, 1979, denying the

preliminary injunction on condition that E.V. Game's proposals, and others of a similar nature, are implemented and that the orders for replacements for Pickering-made styli are segregated or retained for use as proof at the trial.

In the event that E.V. Game fails to meet the conditions Pickering may apply to the court for appropriate curative relief.