**ADVOCATES FOR CHILDREN OF NEW YORK, INC., et al., Plaintiffs,**

v.

**Barbara B. BLUM as Commissioner of Social Services of the State of New York, et al., Defendants.**

**No. 81 Civ. 7769 (JES).**

United States District Court,
S. D. New York.

Jan. 5, 1982.

Shearman & Sterling, New York City, for plaintiffs; Joseph T. McLaughlin, John T. Klug, Vincent J. LaGreca, Cary D. Ferchill, Sol Schreiber, New York City, of counsel.

Robert Abrams, Esq., Atty. Gen., State of New York, New York City, for defendants; Paul M. Glickman, Asst. Atty. Gen., Donna M. Miller, Deputy Asst. Atty. Gen., New York City, of counsel.

Allen G. Schwartz, Corp. Counsel, New York City, for City defendants; Gregg M. Mashberg, Michele M. Ovesey, New York City, of counsel.

## OPINION AND ORDER

SPRIZZO, District Judge:

Plaintiffs seek to enjoin defendants from compelling plaintiffs to turn over to defendants Uniform Case Records (hereinafter "UCRs") of clients to whom plaintiffs are providing preventive services. Plaintiffs are 13 non-profit and charitable agencies who have contracted with New York City's Special Services for Children Agency of the City's Department of Social Services to provide preventive services to children and their families pursuant to section 409–a of the Social Services Law. N.Y.Soc.Serv.Law § 409–a (McKinney Supp.1981) (hereinafter "Soc.Serv.Law"). The contracts with the private preventive service agencies are funded in part by the Special Services for Children Agency, which is in turn reimbursed by the State. Soc.Serv.Law § 409–b. Defendants are the principal executive officers of the City and State agencies involved and are sued in their representative capacities. The defendants contend that the production of the aforesaid records is required by section 409–f Soc.Serv.Law, and that the elimination of funding for those who refuse to comply is mandated by section 398–b Soc.Serv.Law.

The defendants have made clear their intention to terminate all funding to plaintiffs by January 1, 1982. As a consequence plaintiffs also seek a preliminary injunction to prevent the defendants from terminating that funding.

■ To obtain a preliminary injunction, plaintiffs must establish: (a) that plaintiffs would otherwise suffer irreparable injury; and (b) either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in their favor. *Doe v. N. Y. U.*, 666 F.2d 761 at 773 (2d Cir. 1981); *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979); *Caulfield v. Board of Education*, 583 F.2d 605, 610 (2d Cir. 1978).

■ In the instant case there seems to be little question that plaintiffs will suffer irreparable injury by reason of the enforcement of the aforementioned statutes. Once the UCRs are produced, any confidentiality rights which exist will be effectively destroyed. Moreover, any breaches of professional ethics by the certified social workers, attorneys, psychiatrists and psychologists involved will be irrevocable once disclosure is made. In the event that plaintiffs in this action elect not to turn over the UCRs as required by defendants and are thereby cut off from funding, elimination of funding

may well result in a depletion of staff and the elimination of the financial means to continue plaintiffs' preventive service programs.

The defendants have not demonstrated that they will suffer any undue hardship from the issuance of a preliminary injunction. The Court therefore finds, based upon an assessment of all the facts and circumstances of this case, that the balance of hardship tips decidedly in plaintiffs' favor.

The Court must next consider whether plaintiffs have demonstrated that the issues raised in their complaint raise sufficiently serious questions going to the merits to make them a fair ground for litigation. The plaintiffs invoke rights of privacy on behalf of their clients, which rights plaintiffs assert are protected by various provisions of the United States Constitution, including among others the Ninth and Fourteenth Amendments. The scope of a constitutionally protected right to privacy and the sources of that right have not been enunciated with precision by the Supreme Court of the United States and therefore remain unclear. Moreover, this case presents the right to privacy issue in a factual context quite different from any case that has heretofore been decided.*

The Court is thus faced with substantial legal arguments on both sides. On the one hand, the defendants argue that since the City and State have the ultimate responsibility for the welfare of children and families receiving preventive services and for monitoring the care provided by preventive service agencies, that both the City and State must have access to the underlying information necessary for them to discharge that function. It is also clear, however, that the information contained in the UCRs may well be constitutionally protected in that it touches upon intimate personal and family matters and was disclosed in confidence with some reasonable expectation of privacy. *Carey v. Population Services Int'l.*, 431 U.S. 678, 684–86, 97 S.Ct. 2010, 2015–16, 52 L.Ed.2d 675 (1977); *Whalen v. Roe*, 429 U.S. 589, 598–604, 97 S.Ct. 869, 875–878, 51 L.Ed.2d 64 (1977); *Roe v. Wade*, 410 U.S. 113, 152–56, 93 S.Ct. 705, 726–28, 35 L.Ed.2d 147 (1973). Merely because the clients who have made these disclosures are receiving the benefit of public funding is in itself not dispositive of the issue as to what extent, if any, these confidences are protected by the United States Constitution.

Moreover, it is not clear at this time precisely what controls the State and City will impose with respect to the dissemination of this information. While the defendants assert that provisions of State law require that any information disclosed pursuant to section 409–f Soc.Serv.Law be held in confidence, the statutory provisions involved apparently do permit a fair measure of disclosure, *see* Soc.Serv.Law §§ 136, 372, 409–f, 422, 424–a, 444, and do not preclude the possibility that such information will be disclosed to law enforcement agencies.

There is also some question as to whether adequate facilities presently exist to insure that access to this information will be limited. And it seems clear that the question of how widely the information set forth in the UCRs will be disseminated is relevant to an adequate determination as to whether the statutory scheme infringes upon the constitutionally protected privacy rights of plaintiffs' clients. *See Whalen*, 429 U.S. at 605–06, 97 S.Ct. at 879.

Therefore, the Court must conclude, at least at this juncture, that the issues presented by plaintiffs' complaint do present sufficiently serious questions going to the merits to make them a fair ground for litigation.

---

* The closest analogy to the facts of this case is *Hawaii Psychiatric Soc'y, Dist. Branch of Am. Psychiatric Assoc. v. Ariyoshi*, 481 F.Supp. 1028 (D.Hawaii 1979), which upheld a constitutionally based right to privacy claim. But in *Ariyoshi* an administrative search warrant was involved so that the Fourth Amendment consti- tuted a clear basis for the privacy right asserted in that case. Moreover, considerations such as the ultimate responsibility of the state for the proper servicing of children entrusted to the care of private agencies, and the state's right to monitor that care, were not presented in *Ariyoshi*.

It follows that the plaintiffs' application for a preliminary injunction should be granted. However, as a condition to the issuance of that preliminary injunction the Court directs that all discovery in this case be completed by February 16, 1982, that a Pre-Trial Order be submitted to this Court by March 1, 1982, and that all parties be ready for a trial on the merits of this action by March 15, 1982.

SO ORDERED.