**SUBWAY NEWSDEALERS CORPORATION, Plaintiff,**

**v.**

**METROPOLITAN TRANSPORTATION AUTHORITY, New York City Transit Authority and Kapoor Brothers, Inc., Defendants.**

**No. 83 Civ. 3507(MEL).**

United States District Court,
S.D. New York.

May 25, 1983.

Burns, Summit, Rovins & Feldesman, New York City, for plaintiff; Stuart A. Summit, John L. Amabile, David J. Weinstein, New York City, of counsel.

Mary P. Bass, New York City, for defendant Metropolitan Transp. Authority.

Stephen H. Penn, New York City, for defendant Kapoor Bros., Inc.

LASKER, District Judge.

Subway Newsdealers Corp. ("Newsdealers") is a corporation whose shareholders are the operators of approximately 90 of New York City's 142 subway newsstands which they operate under sublicenses from

Ancorp National Services Corp. ("Ancorp"), the current holder of the master license for the operation of all of the city's newsstands.

In the fall of 1982, MTA, on behalf of the New York City Transit Authority ("NYC-TA")[1] invited the submission of pre-qualification applications from those interested in obtaining a new 15-year master license from MTA. Newsdealers submitted an application, and in December 1982 was notified that it was among the ten firms deemed qualified to submit a proposal for the master license. Newsdealers submitted its proposal, along with an application to be certified as a Minority Business Enterprise ("MBE") pursuant to regulations adopted by the United States Department of Transportation ("DOT"), 49 C.F.R. Part 23, on January 18, 1983 (Newsdealers is entirely owned and operated by minority group members—primarily Asian Indians, along with some Hispanics and Pakistanis). Newsdealers was the only applicant to submit an MBE certification request with its application.

On March 18th MTA informed Newsdealers by letter that MTA had decided to negotiate only with Kapoor Brothers, Inc. ("KPI"), another applicant for the license (Pl.Ex. M). No decision had been made on Newsdealers' MBE application at that date. Newsdealers protested the decision and MTA's failure to act on Newsdealers' MBE application, and asked MTA to refrain from awarding the master license until MTA made a decision on Newsdealers' MBE application. This request was not granted, and on April 15th MTA awarded the master license to KPI. The license is to take effect June 1, 1983; Newsdealers' shareholders,

along with the rest of Ancorp's sublicensees, have been notified that they must vacate their newsstands by May 31st.

Newsdealers filed this action on May 9th, seeking declaratory and injunctive relief based on the alleged failure of MTA and NYCTA to comply with Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d et seq., § 19 of the Urban Mass Transportation Act of 1964, as amended, 49 U.S.C. § 1615, and the DOT regulations promulgated thereunder, 49 C.F.R. Part 23, governing participation by MBEs in DOT-funded programs. On its motion for a preliminary injunction, Newsdealers sought an order directing MTA and NYCTA to recognize and certify Newsdealers as an MBE, enjoining the implementation of the master license awarded to KPI, directing MTA and NYCTA to permit Newsdealers' shareholders and affiliates to continue operating their newsstands, permitting Newsdealers to conduct expedited discovery, and fixing an immediate trial date for its action. Since the filing of Newsdealers' motion, MTA has certified both Newsdealers and KPI as MBEs (Letter to the Court dated May 19, 1983).[2]

We conclude that in light of the circumstances the injunctive relief requested by Newsdealers must be denied. The intent of the DOT regulations upon which Newsdealers bases its claim is to assure that recipients of DOT funds (such as MTA) provide an adequate opportunity for MBEs to secure contracts administered by the fund recipient. See 49 C.F.R. § 23.43. The likelihood that Newsdealers will succeed on the merits in showing that Newsdealers is enti-

1. Although the New York City subway system is under the jurisdiction of NYCTA, MTA has supervisory authority over NYCTA, and is responsible for overseeing the grant of master licenses such as the one involved in this action.

2. MTA argues that this action renders moot not only Newsdealers' demand for certification as an MBE, but also its claim that MTA's master license agreement with KPI must be nullified because it was awarded in violation of regulations governing MBE participation in such contract awards. Newsdealers responds that KPI's certification does not moot Newsdealers'

claim that the proper procedures were not followed in the license award process. We agree with Newsdealers that its claims are not moot; Newsdealers asserts not only that the master license should have been awarded to an MBE, but more importantly that the procedure followed by MTA violated the regulations and the statute.

Although Newsdealers' claims are not moot, in view of our disposition of this motion it is unnecessary to decide at this time whether the regulations and statute in fact apply and if so whether they have been observed.

tled to the master license must be considered low, since its competitor for the license is also an MBE, and the regulations do not provide a basis for this Court to determine which of two MBEs should be awarded a particular contract.

Indeed, in light of KPI's certification as an MBE, it is doubtful whether Newsdealers has shown sufficiently serious questions going to the merits to make them a fair ground for litigation, a showing which is necessary if likelihood of success on the merits cannot be demonstrated. *See Jackson Dairy Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam).

Moreover, even if KPI had not been certified as an MBE, and KPI's master license agreement with MTA were declared void, it is unlikely that the Court could award Newsdealers the relief they seek—namely, an injunction ordering that the newsstands' current operators be permitted to continue operating the stands. Ancorp, the entity that currently holds the master license, is not a party to this action, and by sending termination notices to its sublicensees has indicated that it considers its licensee relationship with MTA to be at an end. Thus, ordering MTA to recognize Newsdealers' shareholders as valid licensees would not be an act to maintain the status quo pending resolution of this lawsuit, as Newsdealers contends, but rather would require MTA to enter into a new business relationship with an entity not previously in privity with MTA. Even if the Court had authority to make such an order, on this state of the record we cannot assess Newsdealers' qualifications for acting as the master licensee. Hence, at this stage in the proceedings, nullification of the master license agreement between MTA and KPI would at most require MTA to begin the award process again. Such a step, which would satisfy neither Newsdealers nor MTA, but would deprive MTA and NYCTA of needed revenues and the public of the news service in question, would not constitute an appropriate exercise of the Court's discretion.

The loss of revenues of $168,000 per month that MTA and NYCTA would suffer if injunctive relief were granted is also a consideration in determining whether the balance of hardships in this case tips decidedly toward Newsdealers. Moreover, KPI has already expended more than $450,000 in preparation for its duties under the master license and has given up other business opportunities in order to fulfill its obligations under the agreement. *See* Supplemental Affidavit in Support of Motions of Authority Defendants, p. 12; Affidavit of Bhawnesh Kapoor, ¶¶ 4(*o*), 6. Furthermore, KPI plans to offer sublicenses for 40% of the newsstands [3] to current operators of the newsstands, an action which will mitigate the adverse impact of the new master license award on Newsdealers' shareholders. Hence, even if Newsdealers' contentions as to the merits presented sufficiently serious questions to make them a fair ground for litigation, the balance of hardships in this case cannot be said to tip towards Newsdealers.

The motion for a preliminary injunction is denied. In the circumstances, it is unnecessary to determine the other questions raised by Newsdealers: *e.g.,* whether the DOT regulations relied upon by Newsdealers give rise to an implied private right of action.

It is so ordered.

---

**3.** Under the terms of the master license, KPI is permitted to sublicense 40% of the newsstands; the other 60% must be operated by KPI employees.