Felix MERCED, Ani Sandoval, Juan Rosado, Manuel Delacruz, Plaintiffs,

v.

Edward L. KOCH, as Mayor of the City of New York, Roger P. Alvarez, as Commissioner of Community Development Agency, and Community Development Agency, Defendants.

No. 83 Civ. 7317 (WCC).

United States District Court, S.D. New York.

Nov. 18, 1983.

See also, D.C., 574 F.Supp. 495.

Puerto Rican Legal Defense and Education Fund Inc. by Rosaria R. Esperon, Juan Cartagena, New York City, for plaintiffs.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York by James F.X. Hiler, Asst. Corp. Counsel, New York City, for defendants.

Before PIERCE, Circuit Judge, and CONNER and SPRIZZO, District Judges.

On November 30, 1983, defendant New York City Community Development Agency ("CDA") plans to conduct elections for representatives to thirty-three Area Policy Boards ("APBs"). Plaintiffs, four registered voters of Hispanic national origin, commenced the instant action challenging a change in the manner in which persons will be elected to the APBs beginning with that election, and seeking to enjoin that election.

The CDA is the New York City agency charged with administering federal anti-poverty funds received by New York under the Community Services Block Grant Program. The procedures governing the CDA's administration of these funds are set forth in the "Final Plan for the Restructuring and Reorganization of New York

City's Community Action Program" (the "Final Plan"), which was approved by the Federal Community Services Administration on March 9, 1979. The Final Plan creates thirty-three Neighborhood Development Areas ("NDAs"), which comprise separate geographic sections of New York City where poverty has been determined to be especially severe. For each NDA there is provided an APB, which plays a significant role in determining how anti-poverty funds will be distributed within the NDA.

Under the Final Plan, each APB is comprised of 33 members: 17 elected by NDA residents, 11 appointed from the public sector, and five designated from the private sector. Under the challenged "Plan for the Conduct of Neighborhood Development Area Elections 1983" (the "1983 Plan") adopted by the CDA in July of this year, the composition of each APB will be reduced from 33 to 21 members—12 elected by residents of the NDA, seven appointed from the public sector, and two private sector designees. In addition, the 1983 Plan provides that of the 12 elected members, 10 will be direct representatives of three sub-units of the NDA while the other two will be elected on an at-large basis. Under the Final Plan, the NDA was divided into six, as opposed to three, sub-units, and all elected APB positions were allocated directly to the sub-units, with no provision for at-large representation.

Plaintiffs, all residents of NDS # 3, filed this action on October 5, 1983 challenging the validity of the changes effected by the 1983 Plan under Sections Two and Five of the Voting Rights Act of 1965 (the "Act"), 42 U.S.C. §§ 1973 and 1973c. Plaintiffs claim that the election of APB representatives is an election covered by the Act, and consequently that defendants have violated § 5 of the Act by failing to submit the changes in the electoral scheme to the United States Attorney General for preclearance. Moreover, plaintiffs allege that changes in the makeup and manner of election of APB representatives will have an adverse impact upon Black and Hispanic residents in violation of § 2 of the Act.[1]

Plaintiffs seek a preliminary injunction to prevent defendants from proceeding with the election now scheduled to be held on November 30, 1983. To obtain a preliminary injunction plaintiffs must establish: (a) that plaintiffs would suffer irreparable injury if the injunctive relief requested is not granted and (b) either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in their favor. *Doe v. N.Y.U.*, 666 F.2d 761, 773 (2d Cir.1981); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979); *Caulfield v. Board of Education*, 583 F.2d 605, 610 (2d Cir.1978).

In the instant case, it does not appear that plaintiffs will suffer irreparable injury if an injunction is not issued. Although defendants contend that approval by the Attorney General of the changes set forth in the 1983 Plan is not required, they have submitted those changes to the Attorney General for approval. While it is true that the Attorney General may not be able to act upon that submission prior to the date of the election, that circumstance, in and of itself, does not establish irreparable injury to plaintiffs if the election proceeds. If it is subsequently determined that the changes are consistent with Sections 2 and 5 of the Act, there will be no need for a new election. In any event, the Court has the power to void the election results and to order a new election. The Court is not persuaded that the requisite irreparable injury is established merely because a new election may be required.

Assuming arguendo however, that plaintiff has established the likelihood of irreparable injury, it would still not follow that plaintiffs are entitled to the injunction they seek. While plaintiffs may have demonstrated that there are sufficiently serious

**1.** Although plaintiffs have raised claims under both § 2 and § 5 of the Act, only the § 5 claim is before this three-judge court.

**500**

questions going to the merits as to the legal issues raised in this case, plaintiff has failed to demonstrate that the balance of hardship tips decidedly in plaintiffs' favor.[2]

The defendants assert that they will be substantially prejudiced if the election is enjoined because considerable sums have been spent for the election on November 30, 1983, which sums will have been disbursed in vain if the election is enjoined. Moreover, plaintiffs have to some extent created their own hardship by not commencing this action earlier, especially since plaintiffs admittedly had been timely informed that defendants did not consider the Act to be applicable and would not seek preclearance unless such an action was brought. Had the action been commenced one week sooner, there would have been sufficient time for the Attorney General to have acted upon defendants' submission.[3] Finally, as has been noted above, the plaintiffs' rights can be adequately protected by a new election if it should subsequently be determined that the November 30 election is invalid.

The application for a preliminary injunction is therefore denied without prejudice to plaintiffs' right to seek appropriate relief after the Attorney General has acted upon defendants' submission. Decision is reserved with respect to any remaining motions.

---

**2.** Since plaintiff has not demonstrated a likelihood of success on the merits of the claim that § 5 of the Act applies to this election, the Court must address the question of whether the balance of hardships tips decidedly in their favor.

**3.** Section 5 of the Act allows the Attorney General sixty days in which to interpose an objection to the submission. Thus, if the defendants had submitted the 1983 Plan to the Attorney General prior to October 1, 1983 preclearance would either have been obtained or denied prior to the election date.