**Josefina GONZALEZ, et al., Plaintiffs,**

v.

**ST. MARGARET'S HOUSE HOUSING DEVELOPMENT FUND CORPORATION, et al., Defendants.**

**No. 84 Civ. 1697(PNL).**

United States District Court, S.D. New York.

May 6, 1985.

Norman Siegel, MFY Legal Services, Inc., New York City (Rose Ann Magaldi, New York City, of counsel), Kalman Finkel, Attorney-in-Charge, Civ.Div., The Legal Aid Society, John E. Kirklin, Director of Litigation, Civil Appeals & Law Reform Unit, New York City (Helen Hershkoff, Scott A. Rosenberg, New York City, of counsel), Estroff, Waldman & Poretsky, Jonathan D. Siegfried, Mark Olinsky, New York City, for plaintiffs.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City (Richard W. Mark, Asst. U.S. Atty., New York City, of counsel), for defendants U.S. Dept. of Housing and Urban Development and Samuel R. Pierce, Jr., as Secretary of U.S. Dept. of Housing and Urban Development.

Carter, Ledyard & Milburn, New York City (Louis L. Stanton, Vincent Monte-Sano, Donald F. Simone, New York City, of counsel), for defendant St. Margaret's House Housing Development Corp.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

Plaintiffs are elderly tenants challenging the imposition by the defendant of a mandatory meal service charge as a condition of occupancy at St. Margaret's House Housing Development Fund Corporation, a low income housing project with 249 units in New York City. They move under Fed. R.Civ.Pro. 15(a) for leave to amend the complaint to include a claim of illegal tying under § 1 of the Sherman Act. Plaintiffs have previously amended the complaint twice.

Plaintiffs claim illegal tying, in that the tying product is subsidized rental apartments, while the tied product is the mandatory meal service plan. Occupancy at St. Margaret's is conditioned on the occupant's purchase of meal service.

As to the issue of market power, plaintiffs argue that decent, affordable rental housing for the elderly and handicapped in lower Manhattan is very scarce. (Because of HUD subsidies, no occupant pays more than 30% of his adjusted income for housing.) The alleged anticompetitive effect is twofold. Other providers of prepared foods and meal services are foreclosed from competing for the food dollars of the St. Margaret's occupants. The occupants are foreclosed from choosing the source of their food.

Finally, plaintiffs contend the tying arrangement has a "not insubstantial" effect on interstate commerce. *Yentsch v. Texaco, Inc.*, 630 F.2d 46, 57 (2d Cir.1980) (Oakes, J.) (citing *Fortner Enterprises, Inc. v. United States Steel Corp.*, 394 U.S. 495, 501, 89 S.Ct. 1252, 1257, 22 L.Ed.2d 495 (1969).

They point to the occupants' aggregate expenditure of $300,000 annually on mandatory meal service, arguing that these

meals might have been consumed at another establishment and might have involved different foods, thereby affecting the movement of food stuffs in commerce. *See McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 241–43, 100 S.Ct. 502, 508–09, 62 L.Ed.2d 441 (1980). Also they point to federal financial support used in building the kitchen and cafeteria in which the meal plan is operated, and to federal funds used to build the St. Margaret's apartment building.

■ Leave to amend is to "be freely given when justice so requires." Fed.R. Civ.Pro. 15(a). *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Absent a frivolous or patently insufficient claim, it is not the function of the court on a motion to amend to examine the substantive merits of plaintiffs' claim. *Lerman v. Chuckleberry Publishing Inc.*, 544 F.Supp. 966, 968 (S.D.N.Y.1982) (Werker, J.). Liberality in granting leave to amend is encouraged where no prejudice or disadvantage is suffered by the opposing side. If it were simply a matter of amending the complaint to allege an additional cause, I would freely permit it (notwithstanding the weakness of plaintiffs' argument that this practice has a sufficient effect on interstate commerce to implicate the antitrust laws).

■ But prejudice to the adverse party may be a valid ground for refusal to allow an amendment. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330–31, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971). The unusual posture of the parties will result in serious prejudice to the defendant if the motion is granted. The addition of such an antitrust claim will broaden tremendously the evidentiary issues and the need for extensive third-party discovery. It will cause great delay. Delay works a serious detriment to St. Margaret's for the following reason: Plaintiffs have refused to pay the mandatory meal charges during the pendency of this action. Defendant's attempts to enforce their contractual obligation to pay meal charges in state court through summary proceedings were blocked on plaintiffs' application through a stay by reason of the pendency of this action. Thus, the plaintiffs have achieved a position whereby they are withholding payment throughout the pendency of the action while insulating themselves from judicial review of the lawfulness of such withholding. They have, in effect, achieved a preliminary injunction without a bond and without demonstrating entitlement to a preliminary injunction under the standards of *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70 (2d Cir.1979).

Nancy Serpico, Administrator of St. Margaret's House, states in her affidavit that St. Margaret's meal plan has suffered deficits each year since 1981, ranging from $44,877 to $124,524 a year. Ms. Serpico indicated that the failure of plaintiffs to pay the meal charges has resulted in growing deficits which may force the termination of the program. Such a termination would be to the detriment of all the residents in St. Margaret's who have not joined in this action and willingly take part in the mandatory meal program. The impact on defendant of the plaintiffs' tactic has been exacerbated by a letter from a plaintiff to other St. Margaret's residents encouraging them to join in the strike by not paying the mandatory meal charge. (Serpico Affid., ¶ 7.)

The rule of liberality of amendment does not contemplate such circumstances. If amendment is permitted the defendant will be irremediably harmed by the delays that will result from the litigation of the antitrust action.[1] There is no practical likelihood of defendant recovering the back meal charges from the non-paying residents if defendant prevails in the action.

---

**1.** I recognize that plaintiffs represent they will be ready in no more than 90 days to proceed to trial on the antitrust claim. Two problems remain. Plaintiffs may well underestimate the difficulty and time involved in doing the third-party discovery involved in the antitrust claim. Also plaintiffs' readiness is not the only issue. Plaintiffs may not deprive defendant of the opportunity to prepare adequately to defend such a claim, which is likely to consume a substantially longer period.

Throughout the pendency of the action, plaintiffs are treating themselves to the benefits of ultimate victory in the lawsuit which defendant will, as a practical matter, be unable to recoup if plaintiffs lose. On the other hand, if plaintiffs win, they will be able to recover of the defendant. It is simply unfair to the defendant to burden the litigation with a time consuming anti-trust claim requiring extensive third-party discovery while plaintiffs take the fruits of unearned victory in the meantime. Furthermore, given the weakness of the claim of substantial effect on commerce, the harm to defendant would be for a cause that plaintiffs have little likelihood of vindicating.

Leave to amend the complaint is accordingly denied.[2]

SO ORDERED.

---

**2.** I might well permit the amendment if plaintiffs reversed their payment strike and undertook to make defendant whole during pendency of the litigation.