Paul NAKIAN, et al., Plaintiffs,

v.

Marco DiLAURENTI, et al., Defendants.

No. 87 Civ. 1932 (RWS).

United States District Court, S.D. New York.

Nov. 18, 1987.

---

Steel, Bellman & Levine, P.C., New York City, for plaintiffs; Richard F. Bellman, Ira M. Lowe, Washington, D.C., of counsel.

Reich & Reich, New York City, for defendants; Michael Berman, of counsel.

## OPINION

SWEET, District Judge.

Plaintiff Paul Nakian ("Nakian") moved by notice of motion of September 21, 1987 for a preliminary injunction seeking certain works of art created by his father, Reuben Nakian, now in the possession of defendant Marco DiLaurenti, President of DiLaurenti Galleries, Ltd. and agent for Reuben Nakian. The motion was heard on affidavits and argument on November 6, 1987. On the facts and conclusions set forth below, a preliminary injunction will issue.

**Prior Proceedings**

This diversity action was commenced on March 27, 1987 seeking rescission of the agency agreement between Reuben Nakian, Nakian's decedent and DiLaurenti dated March 13, 1985, recovery of pieces of art, and monetary damages.

Some discovery has been undertaken and the instant motion was brought on by motion dated September 21, 1987 and was heard on affidavits on November 6, 1987.

**Facts**

Reuben Nakian is a well known sculptor of substantial works who died at the age of 89 on December 4, 1986. His son, Paul Nakian, is executor of his estate. DiLaurenti is President of DiLaurenti Galleries Ltd. ("Galleries") and Petit Palais Ltd. Galleries is a subsidiary of Petit Palais Ltd. and is located at 383 West Broadway in New York City.

Reuben Nakian, Paul Nakian and Galleries entered into the Agreement on March 13, 1985 which provided that Galleries would act as the exclusive agent for Reuben Nakian and use its best efforts to promote the sale of the artist's works. The agreement has a five year term and among other things provides:

> 6. The Agent shall have the right to select and retain possession of the Artist's works for exhibition, display and consignment to various galleries, art dealers, museums and exhibitions.
>
> .    .    .    .    .
>
> 8. ... The Agent shall be given possession of those of the Artist's works which he reasonably requires to carry out the terms, intent and purposes of this Agreement.

By November, 1986 the parties to the Agreement were in substantial disagreement as to whether or not Galleries had breached the Agreement. At issue then as now are questions of accounting under the Agreement, the extent of Galleries' best efforts, the adequacy of Galleries' insurance, and the possession of works by the artist by Galleries. By correspondence, meetings, and conferences between counsel, efforts were made, unsuccessfully or not depending on the point of view, to resolve these disputes.

While the affidavits submitted delineate without question a factual dispute as to the alleged breach by Galleries of the Agreement, there are certain facts established by the affidavits in support of the motion without contravention by those in opposition.

Galleries is in possession of some 300 pieces of Nakian art work, including 32 pieces belonging to the Nakian family, not offered for resale.

There is an exhibition planned at the Fundacao Calouste Gulbenkian Museum in Lisbon, Portugal for September, 1988. The Museum has requested a commitment for the use of 65 works commencing June 1,

1988 and access to all works for cataloging, photography, documentation, and insurance. The plans for the Lisbon exhibition have been in progress over the past four years.

Galleries has not indicated any plans for future exhibitions or displays other than the permanent exhibition at the gallery of 12 bronze sculptures which are rotated each month. No facts are set forth to indicate a basis for requirement of the Nakian pieces by Galleries for the purposes of exhibition other than what is set forth above.

What appears to be most hotly controverted are the provisions relating to casting of additional works from molds in possession of Nakian. It may well be that this issue is the main spring which drives this litigation. In any case, there are factual disputes galore with respect to Nakian's right to rescission.

**Conclusions**

The test for issuance of preliminary injunctive relief in this Circuit is well known. A plaintiff can succeed upon showing: "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979).

The facts with respect to this Lisbon exhibition demonstrate both the need for immediate relief and irreparable injury. There is no showing to contradict Nakian's allegations that the interests of Nakian's estate would be damaged in an incalculable fashion were the long planned exhibition not to go forward.

Serious issues as to the good faith efforts of Galleries, its accountings and insurance coverage have been raised, both on the law and the facts. There has been no showing that Galleries would suffer a hardship if required to return the pieces owned by the family, to designate and make available the 65 pieces for the Lisbon exhibition, and to provide the necessary cooperation to prepare for the exhibition.

Assuming that 72 pieces will be required to maintain the schedule of exhibition at the gallery, for the next six months in the absence of any further showing of requirement by Galleries it would appear that another 100 pieces should be returned.

Obviously, this order will be subject to further modification upon an appropriate showing. Discovery will be completed by February 10 and the pretrial order filed February 17, 1988, on which date a final pretrial conference will be held and the action will be placed upon the trial calendar.

IT IS SO ORDERED.