**Mara MALTZ, individually and as natural parent and general guardian of her minor children, Lauren Maltz and Ross Maltz, Plaintiff–Appellant,**

v.

**AETNA HEALTH PLANS OF NEW YORK, INC., Defendant–Appellee.**

No. 719, Docket 96–7766.

United States Court of Appeals, Second Circuit.

Argued Jan. 31, 1997.

Decided May 22, 1997.

Landy & Seymour, New York City (Whitney North Seymour, Jr., Craig A. Landy, and Peter James Clines, Landy & Seymour, New York City, of counsel), for Plaintiff–Appellant.

Kalkines, Arky, Zall & Bernstein, L.L.P., New York City (Henry J. Fieldman, Anthony B. Ullman, and Richard E. Bierman, Kalkines, Arky, Zall & Bernstein, L.L.P., New York City, of counsel), for Defendant–Appellee.

Before: WALKER, PARKER, and HEANEY,* Circuit Judges.

HEANEY, Senior Circuit Judge:

Plaintiff-appellant, Mara Maltz, individually and on behalf of her minor children, Lau-

---

* The Honorable Gerald W. Heaney, United States Senior Circuit Judge for the Eighth Circuit, sitting by designation.

ren and Ross Maltz, appeals from an order of the United States District Court for the Eastern District of New York (Denis R. Hurley, Judge), denying a preliminary injunction against defendant-appellee, Aetna Health Plans of New York, Inc. ("Aetna"). The district court concluded that the contract between Maltz and Aetna does not provide a right to receive the services of a particular primary care physician for as long as she remains insured by Aetna. Because we do not believe that the district court abused its discretion in denying the preliminary injunction, we affirm.

## I.

In December 1994, the Maltz family enrolled in Aetna's Select Choice Health Maintenance Organization Medical Plan through Maltz Enterprises, Inc., of which Maltz's husband is a shareholder and Maltz was a full-time employee until August 1995. The Group Membership Service Agreement ("Service Agreement") between Maltz Enterprises and Aetna provides that the contract term is one year, ending on December 31 of each year. (J.A. at 33 (Service Agreement § VIII(A)).) Upon enrollment, the Maltz family chose Drs. Marvin Sussman and Laurence Miller as their children's personal care physicians.[1]

In August 1995, Aetna announced several new initiatives to its participating providers, including a change in the method of compensation from fee-for-service to capitation. Under the new arrangement, rather than reimbursing the physician for each service provided to an Aetna enrollee, Aetna would begin paying the physician a flat monthly fee for each enrollee who selected the physician as his or her personal care physician. Included with this announcement, Aetna sent each physician a new participation agreement incorporating the proposed changes. The following month, Aetna notified the physicians that it would begin the transition to the capitation method of compensation by November 1995. In October, an Aetna representative met with Drs. Sussman and Mil-

ler and advised them that Aetna planned to terminate its contractual relationships with doctors who would not agree to the proposed arrangements.

Drs. Sussman and Miller decided not to accept the new contract with Aetna because they believed that the compensation payment process created a conflict of interest for them in serving the needs of their patients. They sent out notices warning their patients of the change to capitation and informing them that they were "unable to participate in any insurance plan that forces the capitation system on us and our patients." (J.A. at 59.) Maltz contends, and no evidence in the record contradicts, that Aetna never directly informed her of the intended changes. According to her brief, notice of termination with respect to Drs. Sussman and Miller was sent out effective September 28, 1996. (Appellant's Br. at 9.)

In December 1995, Maltz initiated this action against Aetna, alleging that Aetna violated its fiduciary duty to act in accordance with the terms of the benefit plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to them under Section 404(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1104(a)(1) (1994). Specifically, she alleged that Aetna breached its fiduciary duty to her by switching to the capitation payment method, by jeopardizing her children's existing physician-patient relationships, and by failing to notify her of the proposed changes. In January 1996, Maltz moved for a preliminary injunction, requesting that the district court enjoin Aetna from requiring Drs. Sussman and Miller to change their existing contracts and "from taking any other steps that will threaten the existing doctor-patient relationship between Lauren Maltz and Ross Maltz and their pediatricians during the life of their coverage under Aetna's 'Select Choice' HMO contract." (J.A. at 19 (Notice of Mot. for Prelim. Inj. at 2).) The district court denied the motion. Maltz now appeals.

---

1. A personal care physician is defined by the Service Agreement as a physician who, "in accordance with Aetna Health Plans' policies, has the primary responsibility for coordinating the Member's medical care." (J.A. at 31 (Service Agreement § I(28)).)

## II.

■ To succeed on a motion for a preliminary injunction, the movant must demonstrate " '(a) irreparable harm and (b) either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.' " *International Dairy Foods Ass'n v. Amestoy*, 92 F.3d 67, 70 (2d Cir. 1996) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979) (per curiam)). Our review of the district court is limited to determining whether it abused its discretion in denying the preliminary injunction. *See AMR Servs. Corp. v. International Bhd. of Teamsters*, 821 F.2d 162, 163 (2d Cir.1987) (per curiam).

The district court accepted, for the purpose of this motion, that under its Select Choice plan, Aetna had a fiduciary duty to Maltz and her children and could neither withhold benefits nor diminish the quality of the care provided by the plan. The court denied Maltz's motion based primarily on its determination that the plan did not provide for the services of a particular primary care physician for as long as the Maltzes were covered by Aetna. After considering the evidence regarding the effect of the change in compensation from fee-for-service to capitation, the court concluded that the evidence of harm to the enrollees was slim. In light of the evidence before the district court, it concluded that it did not appear that the health care needs of the two children would be compromised, if, at some point, Drs. Sussman and Miller would no longer be their physicians. Drs. Sussman and Miller saw the children approximately only four times a year, monitoring their care and providing necessary referrals to a specialist who treated them for Krohn's Disease. It was estimated that there were seventy-five Aetna physicians practicing close to the Maltzes' residence who could provide the same type of care to the children. The court further held that, although this case presents a serious question for litigation, the balance of hardships tips in favor of Aetna because a preliminary injunction would frustrate its legitimate goal of trying to control health care costs.

■ On appeal, Maltz principally argues that Aetna's termination of the children's doctor-patient relationship with their pediatricians for Aetna's economic benefit constituted a denial of an ERISA-protected benefit. She contends that the plain language of her contract with Aetna gives her the right to select a primary care physician for her children and to maintain a relationship with that physician for as long as she is insured by Aetna. She acknowledges that a physician may choose to discontinue his or her relationship with Aetna or that Aetna may terminate a contract with a physician to protect its enrollees, but she argues that Aetna may not do so solely for its own economic benefit. She premises her argument on language from the Service Agreement, the handbook for Aetna members, promotional literature, and correspondence that emphasizes the importance of maintaining a close physician-patient relationship with your primary care physician.

With respect to whether she has demonstrated irreparable harm, Maltz argues that the physician-patient relationship is unique and non-fungible such that monetary damages and substitute physicians cannot compensate the children for the loss. She contends that the district court disregarded the unique nature of the services rendered to her children by pediatricians who, through years of care, had intimate knowledge of the children and their needs. Quite to the contrary, the district court explicitly recognized the importance of a physician-patient relationship and stated, "If there's a benefit that is protected by ERISA and that benefit is somehow compromised, it is by its very nature very difficult to attach a dollar amount to the diminution." (J.A. at 566.) The court ultimately determined, however, that although the terms of the contract between Maltz and Aetna permitted an enrollee to choose a primary care physician from the list provided by Aetna, they did not provide for "a vested right to continue with that particular [physician] throughout the life of coverage [by Aetna]." (J.A. 568.)

■ After careful review of the record, we conclude that the district court did not abuse its discretion in denying Maltz's motion for a preliminary injunction. The plan does not give Maltz the right to receive the services of a specific designated physician for as long as she remains insured by Aetna. Moreover, as the district court found, other qualified Aetna physicians were available to care for the Maltz children. We certainly recognize the value of a long-term relationship with a primary care physician and acknowledge that incentive programs may affect the decisions physicians make in the treatment of their patients. Nothing in the contract between Aetna and its enrollees, however, limits Aetna's ability to make significant changes in its relationship with its doctors as long as the enrollees are aware of the changes when they renew their contract with Aetna[2] and Aetna provides them with competent, alternative physicians. Aetna informed the doctors of the proposed change in compensation. Drs. Sussman and Miller notified their patients of the new compensation plan and of their decision to terminate their relationship with Aetna. Maltz renewed her contract with Aetna with full knowledge of these significant changes. She cannot now complain that the changes violate the terms of the contract or that Aetna has violated its fiduciary duty under ERISA particularly where, as here, other competent physicians were made available to her children. Therefore, Maltz has failed to demonstrate either irreparable harm or a likelihood of success on the merits. Accordingly, we affirm the district court's denial of the preliminary injunction.

---

**2.** The Service Agreement also provides for amendments to the plan even during the contract year as long as Aetna gives its enrollees thirty days prior written notice. (J.A. at 33 (Service Agreement § VIII(B)(1)).) Because this case does not involve an amendment of a specific provision of the plan and because Aetna did not provide Maltz with written notice of the relevant changes, this provision is not applicable.