■ John Gazda, on Behalf of Himself as Shareholder of T.J.'s Big Boy, Inc., and in the Right of T.J.'s Big Boy, Inc., and on Behalf of All Other Shareholders Similarly Situated, Respondent-Appellant, v Anthony T. Kolinski et al., Appellants-Respondents. John Gazda, Individually and as a Shareholder of T.J.'s Big Boy, Inc., Respondent-Appellant, v Anthony T. Kolinski et al., Individually and as Corporate Officers and Directors of T.J.'s Big Boy, Inc., et al., Appellants-Respondents. — Judgment unanimously modified, on the law and facts, and, as modified, affirmed, without costs, in accordance with the following memorandum: Plaintiff and the individual defendants each own one third of the outstanding shares of corporate stock of the defendant T.J.'s Big Boy, Inc., a fast food restaurant chain operating in Syracuse and Rochester under an agreement with Big Boy Franchises, Inc., a subsidiary of the Marriott Corporation. The three men began their business in 1972 by executing a written agreement which provided that each of the parties would buy 200 shares of stock in T.J.'s Big Boy, Inc., at $10 per share and each would loan the corporation $8,000 as seed money. The agreement also provided that each of the parties would hold offices in the corporation; that Gazda and Giamartino would share in the duties of managing the corporation's business and receive in return a salary of $12,000 per year, that Kolinski would be employed part time at $6,000 per year and that none of the salaries would be increased without unanimous approval of all the shareholders. In the event one of the shareholders died, resigned voluntarily or was terminated by the board of directors "without the shareholder's consent", the agreement provided a means for repurchase of the shareholder's stock. In 1976 the three men became embroiled in various disputes and the board of directors, on vote of defendants Giamartino and Kolinski, discharged plaintiff Gazda from employment. Plaintiff did not tender his stock to the corporation or the remaining shareholders but remained as a director and the parties have engaged in various disputes ever since. In 1977 plaintiff instituted these two actions seeking a broad variety of relief for himself and for the corporation. After a trial without a jury, the court disposed of the litigation in a judgment containing 17 ordering paragraphs. In general it held that plaintiff had failed to sustain his cause of action to reform the stockholders' agreement to provide that no corporate action could be taken without the unanimous consent of all three stockholders and, accordingly, that the board of directors was free to discharge plaintiff at will and without a showing of fraud or bad faith in his conduct (see *Clark v Dodge*, 269 NY 410). The court also found that the proof did not warrant removal of defendants Giamartino and Kolinski as directors. It did find, however, that the individual defendants had breached their fiduciary duties to the corporation by using corporate assets, cash and credit, to establish and finance defendant G & K's Big Boy, Inc., a subfranchisee of defendant T.J.'s Big Boy, Inc., in which the individual defendants had an interest but plaintiff did not. It therefore ordered an accounting and enjoined any of the defendants from opening any new restaurants. If the accounting proceeding establishes the improper use of the corporate assets of T.J.'s Big Boy, Inc., for the benefit of the subfranchisee, then T.J.'s is entitled to restitution of any damages sustained. We see no reason, however, why all defendants should be enjoined indefinitely from expanding the restaurant business. It is clear from the agreement that subfranchising was always contemplated by the parties. The handling of the G & K subfranchise may have been irregular but the proof does not establish that such subfranchises will have any adverse financial effects on defendant T.J.'s Big Boy, Inc., in the future. The judgment should be modified to limit the injunction to prohibit the establishment of any further G & K Big Boy restaurants until after the accounting and subject to the further order of

the court at that time. The court also erred in ordering the individual defendants to pay punitive damages to either plaintiff or to defendant, T.J.'s Big Boy, Inc., in what is essentially a private action (see *Halpin v Prudential Ins. Co. of Amer.*, 48 NY2d 906, 907; *Vanderburgh v Porter Sheet Metal*, 86 AD2d 688, 689; 14 NY Jur |rev ed|, Damages, § 176). The paragraphs of the order granting punitive damages are therefore stricken. The principal disputes center around defendants' attempts to sell authorized but unissued shares of stock, to set up a stock option plan for key employees and to pay management fees to defendants Giamartino and Kolinski pursuant to an agreement executed by them with defendant T.J.'s Big Boy, Inc., in 1977. At a directors' meeting in March, 1977 defendants Giamartino and Kolinski voted that 600 shares of authorized but unissued stock be offered to the shareholders at $100 per share. A stock option plan was also approved which provided that 1,000 additional shares would be authorized for sale to active employees of T.J.'s at not less than 50% of full market value. The trial court properly enjoined both of these offerings. While the evidence before the court did not establish the value of the stock at that time with certainty, it clearly was worth more than $100. Its book value at the time was approximately $266 and plaintiff's expert, using a conservative three-year capitalization rate, placed the fair market value of the stock at between $497.02 and $572. Plaintiff having established that the directors intended to sell stock of this close corporation at a price markedly below fair value, the burden fell upon the directors then to show that the issuing price fell "within some range which can be justified on the basis of valid business reasons" (*Katzowitz v Sidler*, 24 NY2d 512, 519). They failed to do so. Moreover, although the stock option plan offered at the same meeting may have served a legitimate business purpose, i.e., to reward and encourage key employees, Kolinski in his testimony admitted a second motive for the plan, to increase defendants' control of the corporation at Gazda's expense. That being so, the directors could be absolved of the breach of their fiduciary duties only if they established that no other means of accomplishing the corporate purpose were available (*Schwartz v Marien*, 37 NY2d 487, 492). They failed in this proof also. Accordingly, the court's order enjoining the stock sales authorized by the directors March 26, 1977 was proper. Finally, we hold the court erred in enjoining the acceptance of management fees by defendants Giamartino and Kolinski. Insofar as the shareholders' agreement provides that there may be no increase of salaries without unanimous shareholders' approval, it is void and unenforceable (see *Triggs v Triggs*, 46 NY2d 305; *McQuade v Stoneham*, 263 NY 323, 328-329). Such agreements may be legal if the certificate of incorporation so provides (Business Corporation Law, § 620, subd |b|), but the present certificate does not do so. We find unconvincing the court's attempt to distinguish between shareholders' agreements which prohibit *authorizing* increased compensation and those which prohibit officers from *accepting* increased compensation. The agreement, no matter how construed, violates the statutory mandate that the business of the corporation shall be managed by the board of directors (Business Corporation Law, § 701). Plaintiff has not contended nor do we decide whether the management agreement is affected by the provisions of section 713 of the Business Corporation Law. (Appeal from judgment of Supreme Court, Onondaga County, Shea, J. — shareholders derivative action.) Present — Simons, J. P., Hancock, Jr., Callahan, Boomer and Moule, JJ.