■ In the Matter of ALVIN S. RASKIN, Respondent-Appellant, v WALTER KARL, INC., et al., Appellants-Respondents.—In a proceeding pursuant to Business Corporation Law § 1104-a to dissolve four closely held corporations, where the corporations have elected to buy out the petitioner pursuant to Business Corporation Law § 1118, the four corporations appeal, and the petitioner cross-appeals, as limited by their respective briefs, from so much of a judgment of the Supreme Court, Westchester County (Zeck, J.H.O.), dated December 28, 1984, as determined the aggregate fair value of the petitioner's shares in the four corporations as of January 16, 1983, to be $804,253.20.

Presiding Justice Mollen has been substituted for the late Justice Gibbons (see, 22 NYCRR 670.2 [c]).

Ordered that the judgment is modified, on the law and the facts, by decreasing the sum in the second decretal paragraph from $804,253.20 to $723,827.88; as so modified, the judgment is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Westchester County, for the entry of an appropriate amended judgment.

The petitioner was an officer, director and minority shareholder in four connected corporations (the named appellants-respondents herein) which operate a mailing list brokerage business. This appeal and cross appeal focus on the correctness of the determination of the fair value of the petitioner's shares.

The parties' and their experts agreed that the proper valuation method for these companies was the going-concern investment-value approach wherein one multiplies the corporations' annual earnings (adjusted to reflect the true corporate income) by an appropriate price-earnings rate (see, e.g., Matter of Blake v Blake Agency, 107 AD2d 139, 147, appeal denied 65

NY2d 609; Haynsworth, *Valuation of Business Interests,* 33 Mercer L Rev 457; *cf., Matter of Endicott-Johnson Corp. v Bade,* 37 NY2d 585, 587). The parties disagreed as to (1) the proper adjustments to corporate income, (2) the proper earnings multiplier, and (3) whether a discount for lack of marketability should be applied.

In order to truly reflect the companies' earning power, the net income is adjusted by eliminating from the corporate expenses a portion of the officer-shareholders' salaries that is considered excess compensation. Payment is often made in this form, instead of in the form of dividends, in order to lower the taxable income of the corporation *(see, Matter of Blake v Blake Agency, supra; Matter of Delinko [Sunshine Temporary Off. Personnel],* NYLJ, Oct. 7, 1982, at 6, col 5 [Alexander, J.]). The petitioner questions the trial court's adoption of the adjusted salary figures proposed by the companies' expert, arguing, *inter alia,* that the figures were not supported by admissible evidence. It is true that an expert may not base an opinion solely upon out-of-court material where that material is not available to the opposing party or the court for examination and is not subject even indirectly to cross-examination *(see, People v Sugden,* 35 NY2d 453, 459). The companies' expert here said he relied primarily on two studies which were never made part of the record and which were never a subject of cross-examination by the petitioner. Therefore, they could not form the sole basis for the Judicial Hearing Officer's conclusion. However, there was other evidence in the record upon which the trial court could base its conclusion. This included a study by The Research Institute of America, Inc. (hereinafter RIA), and the salary of a former executive for one of the companies, who was not a shareholder and whose salary was therefore not inflated by disguised dividends. The RIA study, *inter alia,* set forth median salaries and the salaries of the most highly paid 10% of executives, for various categories of corporations, as well as median and high executive compensation as a per cent of total revenue for similar categories. In addition, the record contains considerable testimony as to the companies' solid record of growth and stability upon which the court could justifiably conclude that they had promising and well-above-average prospects for future growth in earnings, and hence, that their officers deserved above average executive salaries. The petitioner also argues that certain other adjustments should have been made to the income of one of the four corporations, List Maintenance Corp. We have examined the record and conclude that the Judicial Hearing Officer's findings should not be disturbed.

The next step is to determine a proper multiplier to apply to the earnings to yield a realistic price that an impartial buyer would pay at arm's length for these companies. This process is an inexact science which involves, among other factors, a comparison with publicly traded companies with similar specialties and growth characteristics, and a comparison with the range of multipliers that prevailing wisdom considers acceptable for companies with high, middle or low growth and future promise *(see, generally,* Haynsworth, *Valuation of Business Interests,* 33 Mercer L Rev 457, 476-478; *Zokoych v Spalding,* 123 Ill App 3d 921, 463 NE2d 943, 951). The record shows that the parties presented evidence addressing these factors at length and the Judicial Hearing Officer carefully considered it. The determination of an appropriate multiplier is within the sound discretion of the finder of facts *(cf., Matter of Fleischer,* 107 AD2d 97, 100-101). A review of the record here shows that the Judicial Hearing Officer here did not abuse this discretion in selecting a multiplier of 10.

The trial court refused to reduce the value of the shares by applying a discount for lack of marketability, relying in part upon cases of other States which rejected discounts *(see, Woodward v Quigley,* 257 Iowa 1077, 133 NW2d 38, *mod on other grounds* 136 NW2d 280; *Brown v Allied Corrugated Box Co.,* 91 Cal App 3d 477, 154 Cal Rptr 170). In so doing, the Judicial Hearing Officer failed to distinguish between a discount for lack of marketability and a discount owing to the minority shareholder's lack of control of the corporation. The above-cited cases criticized the imposition of the latter kind of discount, and correctly so. To do so would defeat the purpose of the Business Corporation Law §§ 1104-a and 1118 to protect a minority shareholder from any unjust exercise by the majority shareholders of their greater power *(Matter of Blake v Blake Agency,* 107 AD2d 139, 149, *supra).* However, a discount for lack of marketability accurately reflects the lesser value of shares that cannot be freely traded, whether they be a minority or a majority of the shares, and as such is an appropriate adjustment *(Matter of Blake v Blake Agency, supra,* at 149; *see, e.g.,* Haynsworth, *Valuation of Business Interests,* 33 Mercer L Rev 457, 489-490; Lyons & Whitman, *Valuing Closely Held Corporations and Publicly Traded Securities with Limited Marketability: Approaches to Allowable Discounts from Gross Values,* 33 Bus Law 2213). The companies' expert's proposed discount of 35% contains an element of discount for minority status and is excessive. A discount for lack of marketability of no more than 10% is appropriate in this case.

The trial court's findings and figures are well supported in all other respects and will not be disturbed. With the aforesaid adjustment for lack of marketability, the value of the petitioner's shares can be calculated as $804,253.20 less $80,425.32 or $723,827.88.

We have examined the petitioner's claims concerning the denial of his motion to strike the note of issue and the denial of his application for attorneys' fees, and find them to be without merit. Mollen, P. J., Mangano, Kooper and Spatt, JJ., concur.