**Ann STREET, Maria Pollio and Anahid Yeranossian, Plaintiffs,**

v.

**Vincent VITTI, Defendant.**

**No. 88 Civ. 0140 (LFM).**

United States District Court,
S.D. New York.

May 2, 1988.

---

Baden Kramer Huffman & Brodsky by Douglas J. Kramer, New York City, for plaintiffs.

Parker Chapin Flattau & Klimpl by Stephen F. Harmon, New York City, for defendant.

## OPINION

MacMAHON, District Judge.

Plaintiffs, Ann Street ("Street"), Maria Pollio ("Pollio"), and Anahid Yeranossian ("Yeranossian"), seek a preliminary injunction and a declaratory judgment to prevent defendant Vincent Vitti ("Vitti") from electing a new director to the board of VTS Travel Enterprises Inc. ("VTS") and from taking or receiving any funds from VTS or its affiliates other than his lawful salary, bonuses or dividends.

We granted a temporary restraining order on January 8, 1988 and held an evidentiary hearing on plaintiffs' application for a preliminary injunction and a declaratory judgment on February 29 and March 1, 1988. Six witnesses testified, we received a number of exhibits, and the parties have submitted briefs and affidavits with attachments in support of their positions.

After carefully considering the exhibits, hearing and observing the witnesses, weighing all of the evidence and arguments of counsel, and bearing in mind that it is not the quantity but the quality of evidence that is ultimately determinative, we grant plaintiffs' application for a preliminary injunction and grant summary judgment to defendant on so much of plaintiffs' action as seeks a declaratory judgment for the reasons set forth below. *See* Rules 52(a), 65(d), Fed.R.Civ.P. The following constitute our findings of fact and conclusions of law.

### FINDINGS OF FACT

Plaintiffs, all citizens of New York, are officers and minority shareholders of VTS,

a travel agency incorporated and doing business in New York. Vitti, a citizen of New Jersey, is the majority shareholder and president of VTS. Vitti and Street serve on the board of directors of VTS.

Plaintiffs brought this diversity action to remove Vitti from office and to force him to account for alleged waste of corporate assets, unauthorized loans, and theft of corporate opportunities. Plaintiffs also seek a declaratory judgment that the shareholders' agreement bars Vitti from filling a vacancy on the board of directors of VTS other than with one of the plaintiffs.

VTS was formed by Vitti, Street, and James Twohey ("Twohey") in 1980. All three had been employees of Citicorp Travel, a division of Citicorp Travel Services, Inc. When government regulations were adopted that would require Citicorp to divest itself of the travel business, Vitti proposed that Street and Twohey join him in purchasing and operating Citicorp Travel. At the suggestion of Street, the three retained a law firm to aid them in acquiring the business, organizing the corporation, and drafting a shareholders' agreement. On February 19, 1980, Vitti, Street, and Twohey signed a shareholders' agreement, the terms of which are now disputed.

The original shareholders' agreement provided that Vitti subscribe for sixty-three shares, while Twohey and Street subscribe for six shares each. The board of directors was to consist of Vitti, Twohey, Street, and two other members designated by Vitti. The parties also pledged to "continue to cause said persons to be elected and re-elected to continue as directors of the Corporation, and generally to so vote at its Shareholders and Directors meetings so as to carry out and to make effective all the terms and provisions of this agreement." Another provision set forth the offices and salaries to which Vitti, Twohey, and Street would be entitled. The agreement further provided that an affirmative vote of eighty

percent of the directors was required to issue additional shares, terminate employment of a corporate officer, or pay bonuses or dividends. The agreement required the parties to offer their shares to the corporation if they retired, died, or were discharged for cause, and it also provided a book value formula for determining the purchase price for such shares. The agreement did not set forth the manner in which vacancies on the board would be filled.

In May 1980, the shareholders' agreement was amended to add Pollio and Yeranossian as shareholders and officers. Pollio and Yeranossian each purchased five shares, Vitti purchased two additional shares, and Street and Twohey each purchased four additional shares. Although neither Pollio nor Yeranossian was made a director, the amended agreement provided that all shareholders would have the right to attend meetings of the board of directors and management. The amended agreement was signed by Vitti, Twohey, Street, Pollio and Yeranossian. Vitti also signed on behalf of VTS.

In June 1981, VTS Travel Enterprises of N.J., Inc. ("VTS–NJ") was organized under the laws of the state of New Jersey, with Twohey and Vitti as directors. The shareholders of VTS–NJ are the same as the shareholders of VTS, and their respective share interests in each corporation are the same. The share interests of each shareholder of VTS–NJ were funded with earnings from VTS. VTS and VTS–NJ maintain separate corporate records and bank accounts and file separate tax returns. The parties dispute whether plaintiffs authorized the creation of VTS–NJ.

In December 1986, Twohey retired, and his shares were repurchased by VTS, apparently pursuant to the book value formula in the shareholders' agreement.[1] Also in December, one of the directors appointed by Vitti died, creating a second vacancy on the board.

In the spring of 1987, Street and the other plaintiffs began questioning Vitti about his finances and management of

---

**1.** Plaintiffs originally claimed that Vitti had paid Twohey "an undisclosed sum" for his shares. At the evidentiary hearing, Street conceded that the payment was based on the shareholders' agreement provision and that she knew the total purchase price.

VTS. Vitti called a formal meeting of shareholders soon afterwards, the first such meeting in seven years.[2] Vitti announced that the purpose of the meeting was to elect new directors. The proposal alarmed plaintiffs. If Vitti replaced both directors, he would control eighty percent of the board, enabling him to carry out any of the corporate acts requiring a supermajority. In particular, Vitti would be able to discharge plaintiffs or issue additional shares. The latter possibility concerned plaintiffs because Vitti could issue sufficient additional authorized shares to dilute plaintiffs' collective shareholdings to less than the twenty percent level required for dissolution of the corporation under N.Y. Bus.Corp.L. § 1104(a) (McKinney 1986).

The dissolution remedy assumed great importance to plaintiffs because of improprieties they attributed to Vitti. Plaintiffs claim that, without authorization, Vitti structured a loan from VTS to VTS–NJ to gain tax benefits for himself, used VTS–NJ funds to purchase the building VTS–NJ had been renting and later sold the building for a substantial profit which he kept, rented his condominium in Puerto Rico to VTS–NJ, used company credit cards for personal expenses, and borrowed substantial funds from VTS and VTS–NJ.

Vitti responds that these actions were authorized informally and that plaintiffs have no right to prevent him from filling the board vacancies. Vitti further argues that the VTS–NJ transactions cannot be considered in this action. Vitti also contends that the action must be dismissed for failure to join VTS as a party.

### CONCLUSIONS OF LAW

I. *Motion to Dismiss for Failure to Join VTS*

■ Clearly, VTS need not be joined as a party to plaintiffs' claims against Vitti for waste and self-dealing. Those claims are brought by plaintiffs in their capacities as officers, pursuant to N.Y.Bus.Corp.L. § 720 (McKinney 1986). New York cases interpreting § 720 uniformly conclude that the corporation is neither a necessary nor an indispensable party in such actions.[3]

■ Whether VTS is an indispensable party to plaintiffs' claim for a declaratory judgment on the shareholders' agreement is a closer question. We conclude that, although VTS is a party that should have been joined if feasible, it is not indispensable and therefore the claim for a declaratory judgment need not be dismissed on Rule 19 grounds.

Rule 19(a) sets forth the relevant considerations for determining when a party should be joined. Vitti contends, and we agree, that VTS should have been joined if it were feasible. VTS, however, is a New York citizen that would have to be aligned with defendant Vitti,[4] thereby destroying diversity jurisdiction. We therefore must determine whether in equity and good conscience the action can proceed without VTS. The factors we are obligated to consider include:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Rule 19(b), Fed.R.Civ.P. In applying these factors, we bear in mind this circuit's ad-

---

**2.** VTS never had formal shareholders' meetings. During the first few years, VTS had a few board meetings. VTS also held managers' meetings at which minutes were kept. No meetings of any kind have been held since 1985, except for a board meeting in February 1988.

**3.** *See, e.g., Blakeman v. Conroy,* 512 F.Supp. 325, 329 (E.D.N.Y.1981); *Rapoport v. Schneider,* 29

N.Y.2d 396, 400–01, 328 N.Y.S.2d 431, 435, 278 N.E.2d 642, 644–45 (1972); *Conant v. Schnall,* 33 A.D.2d 326, 327, 307 N.Y.S.2d 902, 904 (1970).

**4.** *Smith v. Sperling,* 354 U.S. 91, 96–97, 77 S.Ct. 1112, 1115–16, 1 L.Ed.2d 1205, 1211–12 (1957).

monition that we interpret the rule flexibly and avoid dismissal unless nonjoinder makes just resolution of the action impossible.[5] Moreover, *Provident Tradesmens Bank & Trust Co. v. Patterson*[6] emphasized that the Rule 19(b) factors should be interpreted practically rather than technically or by formula. We find that VTS's practical interests will not be impaired by interpretation of the shareholders' agreement in its absence.

Defendant argues that the signature of VTS on the agreement gives it an interest that will be prejudiced in its absence. Unquestionably, the shareholders' agreement creates some obligations for VTS, for example, to pay salaries to officers, as well as some rights, such as to require resigning officers to offer shares to the corporation. None of VTS's rights or obligations, however, are at issue here. Thus, although defendant correctly asserts that generally all parties to a contract must be joined in an action to reform it,[7] to dismiss this action on Rule 19 grounds would succumb to the formalistic approach condemned by *Provident*. VTS simply has no interest in which party controls the board of directors.[8] Unlike the cases relied on by

defendant, this is not an action between corporate shareholders and an outside party concerning the terms of a contract between the corporation and the outside party.[9] Rather, this action involves an internal battle for control. No prejudice to VTS arises from determining the meaning of the shareholders' agreement.

Nor is there any real risk of multiple or inconsistent adjudications. All signatories with any interest in the operation of the board of directors are before the court. Any determination will bind them in future actions.

Finding that this action may proceed without VTS, we turn to the merits of plaintiffs' request for a preliminary injunction.

## II. *Preliminary Injunction*

A party seeking issuance of a preliminary injunction in this circuit has the burden of proving "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hard-

---

**5.** *Jaser v. New York Property Ins. Underwriting Ass'n,* 815 F.2d 240, 242 (2d Cir.1987); *Prescription Plan Service Corp. v. Franco,* 552 F.2d 493, 496–97 (2d Cir.1977).

**6.** 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

**7.** 3A J. Moore, J. Lucas & G. Grotheer, *Moore's Federal Practice* ¶ 19.10 (2d ed. 1987).

**8.** *See Schmidt v. Magnetic Head Corp.,* 97 A.D.2d 151, 163, 468 N.Y.S.2d 649, 657 (1983) (corporation is "a passive litigant in an action involving the rights of competing stockholder factions to select a corporate director"); *see also Adler v. Svingos,* 80 A.D.2d 764, 436 N.Y.S.2d 719 (1981) (court, without discussion, permitted action to reform shareholders' agreement of close corporation to go forward despite absence of corporation as party); *cf. Christ v. Lake Erie Distributors, Inc.,* 51 Misc.2d 811, 816, 273 N.Y.S.2d 878, 886 (Sup.Ct.1966) (in action to set aside election of directors, corporation is a necessary party but not indispensable), *aff'd,* 28 A.D.2d 817, 825, 282 N.Y.S.2d 728 (1967); *Veverka v. Suffolk County Patrolmen's Benevolent Ass'n,* 236 N.Y.S. 2d 917 (Sup.Ct.1963) (corporation may not institute action to determine validity of election of officers).

**9.** Each of the cases relied on by defendant found a substantial risk of actual prejudice to absent or present parties. *See, e.g., Gellman v. Paul,* 85 F.R.D. 357 (S.D.N.Y.1980) (plaintiff sued corporation's chief executive officer and principal shareholder on contract entered into by corporation; dismissed because corporation's absence prejudiced existing defendants by increasing the likelihood they would be found liable and prejudiced corporation by exposing it to collateral estoppel liability); *Boise Cascade Corp. v. Wheeler,* 419 F.Supp. 98 (S.D.N.Y.1976) (sole shareholder of construction corporation sued architects, seeking relief for losses on contract entered into by construction corporation; dismissed because any judgment in the shareholder's suit in absence of construction corporation would prejudice a party in the ongoing arbitration between construction corporation and hospital on the underlying contract), *aff'd,* 556 F.2d 554 (2d Cir.1977); *Richmond Lace Works, Inc. v. Epstein,* 31 F.R.D. 150 (S.D.N.Y. 1962) (corporation's suit against director of corporation to rescind shareholders' agreement dismissed because failure to join other directors who had signed the agreement left defendant director subject to suit by nonparty directors).

ships tipping decidedly toward the party requesting the preliminary relief." [10]

### A. *Irreparable Harm*

■ "Irreparable harm" means injury for which a monetary award cannot be adequate compensation.[11] The harm threatened must be probable, that is, "not remote or speculative but ... actual and imminent." [12]

■ Monetary compensation would be insufficient here for several reasons. If, as claimed, plaintiffs are discharged from their positions with VTS, they would lose their rights to inspect corporate books. Loss of this right alone has been recognized as irreparable harm in New York.[13] In addition, firing plaintiffs would invoke provisions of the shareholders' agreement requiring discharged officers to sell their shares, the value of which cannot be determined adequately. The shareholders' agreement itself recognizes the uniqueness of shares of VTS and the consequent inadequacy of legal remedies. Moreover, by discharging plaintiffs, defendant would destroy their voice in management.[14]

Sale of additional shares in VTS also would threaten plaintiffs with irreparable harm. If additional shares are sold, the rights of innocent third parties will be interposed, endangering plaintiffs' ultimate remedy.[15] Dilution of plaintiffs' shareholdings to less than twenty percent would eliminate their rights under New York's

dissolution statute, N.Y.Bus.Corp.L. § 1104(a). We find that permitting defendant to nullify plaintiffs' statutory right, which is designed to protect minority shareholders from the unjust exercise of power by majority shareholders,[16] would constitute irreparable harm as well.

Nor does the threat of irreparable harm lack imminency. Street testified creditably that Vitti told her he intended to elect new directors and sell additional shares. The notice of the meeting and Vitti's own testimony confirm his intent to fill the vacant seats. Vitti also expressed dissatisfaction with the work performed by Street and Yeranossian and has altered their job duties. This evidence, together with the decision to hold a formal meeting, after seven years of informal or no meetings, suggests an imminent threat to plaintiffs' position.

Accordingly, we find that plaintiffs have established imminent irreparable harm.

### B. *The Merits and Balance of Hardships*

■ We find the instances of self-dealing revealed during the evidentiary hearing sufficient to show serious questions on the merits of plaintiffs' claims for waste and breach of fiduciary duty. New York requires that majority shareholders and directors of closed corporations conform to the high standards of a fiduciary relationship.[17] Plaintiffs have raised serious ques-

---

**10.** *Bell & Howell: Mamiya Co. v. Masel Supply Corp.,* 719 F.2d 42, 45 (2d Cir.1983) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam)).

**11.** *Loveridge v. Pendleton Woolen Mills, Inc.,* 788 F.2d 914, 917 (2d Cir.1986).

**12.** *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., supra,* 596 F.2d at 73.

**13.** *See Brenner v. Hart Systems, Inc.,* 114 A.D.2d 363, 366, 493 N.Y.S.2d 881, 884 (1985).

**14.** *See Shubin v. Surchin,* 27 A.D.2d 452, 456, 280 N.Y.S.2d 55, 59 (1967); *721 Corp. v. Morgan Guaranty Trust Co. of New York,* 40 Misc.2d 395, 243 N.Y.S.2d 198 (Sup.Ct.1963).

**15.** *See Drobbin v. Nicolet Instrument Corp.,* 631 F.Supp. 860, 912 (S.D.N.Y.1986); *see also Gazda v. Kolinski,* 91 A.D.2d 860, 458 N.Y.S.2d 387

(1982) (enjoining issuance of stock when defendant was unable to offer valid business reason for doing so and it would undercut plaintiff's ability to protect interests), *aff'd,* 64 N.Y.2d 1100, 489 N.Y.S.2d 907, 479 N.E.2d 252 (1985).

**16.** *See Raskin v. Walter Karl, Inc.,* 129 A.D.2d 642, 644, 514 N.Y.S.2d 120, 122 (1987).

**17.** *See Wolff v. Wolff,* 67 N.Y.2d 638, 641, 499 N.Y.S.2d 665, 490 N.E.2d 532 (1986); *Fender v. Prescott,* 101 A.D.2d 418, 476 N.Y.S.2d 128 (1984), *aff'd,* 64 N.Y.2d 1077, 489 N.Y.S.2d 880, 479 N.E.2d 225 (1985); *see also Diamond v. Oreamuno,* 24 N.Y.2d 494, 498, 301 N.Y.S.2d 78, 81, 248 N.E.2d 910, 912 (1969) ("allegation of damage to the corporation ... has never been considered to be an essential requirement for a cause of action founded on a breach of fiduciary duty").

tions as to whether Vitti failed to live up to that standard. No dispute exists that Vitti borrowed corporate funds through loan and exchange accounts, purchased and sold the New Jersey property used by VTS–NJ without turning over the profit, and rented a condominium in Puerto Rico to VTS–NJ. Questions remain as to whether the transactions were informally authorized and whether any damage resulted to VTS. In addition, plaintiffs raised questions as to whether Vitti used company credit cards for personal expenses.

We find unpersuasive Vitti's argument that we should not consider the transactions involving VTS–NJ. Although plaintiffs clearly could have brought the claims in a derivative action through VTS–NJ, they are also appropriately brought in plaintiffs' capacities as officers of VTS. Plaintiffs allege that VTS–NJ was created without their authorization. This circumstance would make all VTS–NJ transactions with Vitti violations of his fiduciary obligations to VTS as well. Moreover, the unsecured loan of $810,000 from VTS to VTS–NJ, using Vitti as middleman, essentially put VTS funds at risk for VTS–NJ's transactions. Accordingly, we find no obstacle to considering Vitti's transactions with VTS–NJ in concluding that plaintiffs have raised serious questions on the merits.

We also find that the balance of hardships tips decidedly in plaintiffs' favor. Without an injunction, plaintiffs risk losing their employment and, consequently, their rights to manage the company, review corporate books and records, and protect their ownership interests. Vitti has presented no countervailing interests. Although Vitti testified that he was dissatisfied with the performance of Street and Yeranossian, he provided no specific evidence that would suggest harm to VTS or himself from continuing to employ them. We recognize that plaintiffs' charges may cause Vitti per-

sonal embarrassment, but this harm may be minimized by an accelerated discovery schedule and priority on our trial calendar.

Accordingly, we conclude that plaintiffs are entitled to a preliminary injunction. The scope of the preliminary injunction, however, should be tailored to the harm threatened. During the pendency of this action, therefore, we enjoin Vitti from discharging plaintiffs or issuing stock. In addition, although Vitti may select board members in accordance with the bylaws, they may not approve or ratify transactions or loans to Vitti or his immediate family.

### III. *Declaratory Judgment*

Plaintiffs argue that the vacancy on the board of VTS caused by Twohey's retirement may be filled only by a minority shareholder. They contend that the provision of the shareholders' agreement naming Vitti, Street, and Twohey as directors and committing them to vote their shares to implement the agreement implicitly requires preservation of Twohey's seat as a minority seat. Alternatively, plaintiffs argue that the provision precludes filling Twohey's seat and that the board now must consist of four, not five, members. Rejecting this interpretation, defendant contends that Twohey's seat may be filled by majority vote of the directors in accordance with the bylaws of VTS.

The shareholders of VTS have embodied their agreement in a written document (Exhibit 1). Initially, we must determine whether an ambiguity exists in the shareholders' agreement, based on the face of the document itself.[18] If we find the shareholders' agreement to be unambiguous, the parol evidence rule bars consideration of extrinsic evidence,[19] and so no genuine issues of material fact will remain. We may then determine the meaning of the agreement as a matter of law and enter summary judgment in accordance with Rule 56(c), Fed.R.Civ.P.[20]

---

**18.** *See Sutton v. East River Savings Bank,* 55 N.Y.2d 550, 554, 450 N.Y.S.2d 460, 463, 435 N.E.2d 1075, 1078 (1982).

**19.** *See Marine Midland Bank–Southern v. Thurlow,* 53 N.Y.2d 381, 388, 442 N.Y.S.2d 417, 419,

425 N.E.2d 805, 807 (1981). *See generally* 58 N.Y.Jur.2d *Evidence & Witnesses* § 555 (1986).

**20.** *See Wards Co. v. Stamford Ridgeway Associates,* 761 F.2d 117, 120 (2d Cir.1985); *Heyman v. Commerce & Industry Ins. Co.,* 524 F.2d 1317,

■ We conclude that the failure to specify a procedure for filling the seats of retiring directors does not constitute an ambiguity in the shareholders' agreement and that plaintiffs' interpretation of the agreement as requiring minority shareholder control of one-fourth or two-fifths of the board is without merit.

*Schmidt v. Magnetic Head Corp.* [21] presented very similar questions and reached the same result. In *Schmidt,* the minority shareholders contended that the shareholders' agreement gave them the right to designate a director to replace one who had resigned. The agreement implemented a proxy system of voting shares and included provisions that the shares would be voted to elect the two minority shareholders and their lawyer to the board. The agreement also gave the minority shareholders the right to designate a new proxy holder in the event that the lawyer resigned or died. The lawyer resigned, but the agreement did not provide for filling his seat. *Schmidt* determined that the omission did not constitute an ambiguity and excluded all extrinsic evidence.[22] The court concluded "we decline to fashion a new clause to be placed in the shareholders' agreement which the plaintiffs believe to be more equitable." [23]

Following *Schmidt,* we find no ambiguity in the VTS shareholders' agreement respecting the composition of the board of directors. The parties' failure to state how directors were to be replaced does not create an ambiguity in the agreement. We read the eighty percent provision to have been designed to protect the interests of Street and Twohey by enabling them to combine votes to block certain corporate acts. Nothing in the clear, unambiguous language of the agreement suggests that this power was intended to continue after either had stepped down.

Accordingly, we find that plaintiffs' contentions concerning the terms and meaning of the shareholders' agreement are not "fairly reasonable" interpretations [24] and that no issue of material fact exists.

The foregoing opinion constitutes our findings of fact and conclusions of law, in accordance with Rule 52(a), Fed.R.Civ.P.

## CONCLUSION

Accordingly:

(1) We grant plaintiffs' motion for a preliminary injunction.

(2) We dismiss plaintiffs' claim for a declaratory judgment on the merits.

(3) There being no just reason for delay, we direct the parties, within ten (10) days, to settle (1) the form of a preliminary injunction not inconsistent with this opinion, and (2) the form of a summary judgment dismissing plaintiffs' declaratory judgment claim on the merits. *See* Rule 54(b), Fed.R. Civ.P.

1320 (2d Cir.1975). *See generally* 6 J. Moore & J. Wicker, *Moore's Federal Practice* ¶ 56.17[43] (2d ed. 1987).

**21.** 97 A.D.2d 151, 468 N.Y.S.2d 649 (1983).

**22.** 97 A.D.2d at 156–57, 468 N.Y.S.2d at 653–54.

**23.** 97 A.D.2d at 157, 468 N.Y.S.2d at 654. *Accord Green v. Karlson Associates Inc.,* 159 N.Y.S. 2d 245 (Sup.Ct.1957).

**24.** *Wards Co. v. Stamford Ridgeway Associates, supra,* 761 F.2d at 120.